**Freda EPLING, Administratrix of the Estate of Miles Stanley Epling, Deceased, Plaintiff-Appellant,**

v.

**M. T. EPLING COMPANY, Defendant-Appellee.**

**No. 20324.**

United States Court of Appeals, Sixth Circuit.

Dec. 23, 1970.

Certiorari Denied March 8, 1971.

See 91 S.Ct. 990.

John D. Kelleher, Cleveland, Ohio, for defendant-appellee; Lucian Y. Ray, McCreary, Ray & Robinson, Cleveland, Ohio, on brief.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and MURRAH, Senior Circuit Judge.*

JOHN W. PECK, Circuit Judge.

This action seeking damages for wrongful death under the Jones Act, 46 U.S.C. § 688, was brought by the widow and administratrix (hereinafter the "plaintiff") of a seaman who perished while employed by the defendant-appellee (hereinafter the "defendant"). This appeal was perfected from the order of the District Court granting the defendant's motion for a directed verdict.

The relevant facts are not controverted. At the time of his death the decedent was employed by the defendant as an operator of a derrick boat used by it in its business of dredging and unloading of river barges on the Ohio River. On the date in question, April 5, 1962, decedent, as operator of the derrick boat, was a member of a crew of a small flotilla of work vessels, including a small tow boat, a scow, and the derrick boat, engaged in unloading two barges for the Vanadium Corporation at Graham Station, West Virginia. The defendant's three vessels were moored in a line parallel to the Vanadium dock, and the two barges which were being unloaded were moored abreast of each other next to the work boats, the innermost barge being unloaded first. When the first barge was unloaded, at approximately 1:35 p.m. that day, the position of the two barges was switched, the empty barge being moored in the outermost position and the full barge being moved into position next to the work boats. Although the precise time is not clear from the record, at some time after the first barge was emptied, the owner of that barge, the Ohio River Company, was notified that the barge was

Harry A. Sherman, Pittsburgh, Pa., for plaintiff-appellant; Barkan & Barkan, Columbus, Ohio, S. Eldridge Sampliner, Cleveland, Ohio, on brief.

* Honorable Alfred P. Murrah, Senior Circuit Judge for the United States Court of Appeals, Tenth Circuit, sitting by designation.

empty and that it could be picked up. This was the full extent of the notification.

Two crews were employed by the defendant at the work site. Decedent was a member of the afternoon shift which came on duty at approximately 2 p. m. and was to work until approximately 9:30 or 10 p. m. When the afternoon shift came on duty, the first barge had already been unloaded and moved to the outermost position. The afternoon crew continued unloading the second barge until approximately 8 p. m., at which time they engaged in other duties preparatory to leaving the work site for the night. Decedent was last seen by a fellow employee at approximately 8 p. m. greasing the derrick clam shell bucket which was then lying on the scow. Some 30 to 45 minutes later he was discovered to be missing, and approximately three weeks later his body was discovered in the river. Post mortem examination revealed the cause of death to have been drowning.

No one knows with certainty what happened to the decedent. There were no eyewitnesses to his disappearance. However, during the 30 to 45 minute interval between the time he was last seen and the time he was discovered to be missing, the Ohio River Company towboat *Bob Benter* made an "on the fly" (i. e., without coming to a complete stop) pickup of its empty barge, causing a "more than average bump" to the remaining vessels. This was sufficient to cause another of defendant's crewmen to stumble around.

Plaintiff's theory of recovery was that her decedent was knocked off the work boats and into the river by the rough impact of the "on the fly" pickup of the empty barge by the Ohio River Company. She contends that defendant was negligent in positioning the empty barge alongside the work boats and in failing to place marker lights thereon after dark, in failing to have a guardrail around the derrick boat, in calling for or permitting an "on the fly" pickup of the empty barge in the dark, and in failing

to notify the crew that such a pickup was imminent and that they should therefore seek positions of safety. The District Court, applying the relevant test of Rogers v. Missouri Pacific R. R., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), held that there was no evidence from which the jury could find that any negligence of the defendant "played any part at all or contributed to in any degree" the decedent's death and granted the motion for a directed verdict. On appeal, in addition to renewing her allegations of negligence on the part of the defendant, plaintiff contends, apparently for the first time, that any negligence on the part of the Ohio River Company (not a party thereto) in causing the bumping of the work boats is imputable to the defendant since the defendant "arranged for" the nighttime "on the fly" pickup.

■ The initial obstacle to the plaintiff's recovery, the complete absence of any evidence of how or when the decedent went into the river, is formidable but not insurmountable. From the evidence presented, even without direct evidence of the circumstances of death, a jury would be entitled to presume that the decedent was engaged in the performance of his duties and was exercising due care for his own safety at the time of his death. See Tennant v. Peoria & P. U. Ry., 321 U.S. 29, 34, 64 S.Ct. 409, 88 L.Ed. 520 (1944). Moreover, the occurrence of an unusual event, i. e., the bumping of the work boats by the towboat *Bob Benter* during the period of time during which the decedent disappeared would support a reasonable inference that the decedent was knocked off of one of the work boats and into the river as a result of that bump. There remain, however, significant questions of whether any negligence of the defendant played any part therein.

■ Two of the plaintiff's allegations of causal negligence may be quickly dismissed. Plaintiff contends that the defendant was negligent in calling for or permitting the nighttime "on the fly" pickup of the empty barge and in failing

to warn the crew when such pickup would be made and that they should then seek positions of safety. But the only evidence on this question was that the defendant, in accordance with its normal procedures, merely notified the Ohio River Company that its barge was empty and could be picked up. As discussed below, there was no contractual or other relationship between the defendant and the Ohio River Company, and there was no evidence that the defendant had any control over the time and/or manner in which the Ohio River Company picked up its empty barge. Nor is there any suggestion in this record that the defendant had any greater knowledge of the circumstances of the impending pickup prior thereto than the crew members would have gained through visual observation upon reporting to work, i. e., that one barge was empty and that its owner would pick it up, presumably at its convenience. Thus there is no evidence in this record to support any inference that the defendant even knew when or how the empty barge would be picked up, much less any inference that the defendant called for an "on the fly" pickup but failed to warn its employees of that fact.

■ Similarly brief treatment can be given to the next suggested ground of causal negligence, the defendant's failure to have a guardrail around the derrick boat. There was simply no evidence that the operation of the derrick boat would have permitted such a railing. To the contrary, the evidence showed that it would be impossible to have a railing around the derrick boat where, as here, the derrick boat was in contact with a scow as part of a small "tow" of work vessels. Thus there was no basis for an inference of causal negligence. See Schlichter v. Port Arthur Towing Co., 288 F.2d 801, 804 (5th Cir), cert. denied, 368 U.S. 828, 82 S.Ct. 50, 7 L.Ed.2d 32 (1961).

■ The remaining significant grounds of causal negligence asserted by the plaintiff are the defendant's failure

to place marker lights on the empty barge and the positioning of that barge in the outermost position of the group of vessels. Although there is no foundation therefore in the record, plaintiff contends that the absence of such lights on the empty barge after nightfall was a violation of Coast Guard regulations, thereby implying that such failure was an instance of causal negligence. However, in addition to the failure of proof of a violation of regulations, the plaintiff's argument cannot stand because the mere violation of a maritime statute or regulation does not establish liability. A causal connection between the violation and the injury must be shown. See Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). Therefore the inquiry with respect to the defendant's positioning of the empty barge and its failure to have marker lights placed thereon is, as with the other allegations of negligence, whether there is any evidence from which a jury could reasonably infer that some negligent act or omission contributed to the decedent's death. We do not believe that there is. Stated negatively, there was no evidence of how the positioning of the barges and the failure to have lights thereon contributed to the bumping of the work boats by the towboat *Bob Benter*. More significantly, however, the only evidence in the record concerning the cause of that bump was the testimony of a former employee of the Ohio River Company who had been employed as a deck hand on the *Bob Benter* on the night in question. That witness testified without contradiction that the bumping of the work boats was caused by the *Bob Benter's* excessive speed and the improper approach angle which it employed during the course of the pickup operation. The witness further testified that no act or omission on the part of the defendant was a cause of those circumstances of excessive speed and improper angle.

■■ Perhaps in light of the development of the evidence in the District Court, the plaintiff now contends that

any negligence on the part of the Ohio River Company in making the pickup of its empty barge can be imputed to the defendant because the defendant "arranged for" the nighttime "on the fly" pickup. This after the fact theory of recovery similarly has no basis in the record. Not only did the uncontradicted evidence specifically negate the existence of any contractual or other relationship between the defendant and the Ohio River Company, but there is no suggestion in the record that the defendant had the slightest control over when or how the Ohio River Company picked up its empty barge. The Jones Act, through incorporation of the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.), makes the shipowner liable only for those injuries to its employees inflicted by the negligence of its "officers, agents, or employees." 45 U.S.C. § 51. And, contrary to plaintiff's contention, even the sweeping non-delegable duty imposed by the Jones Act upon the employer to provide his employees with a safe place to work will permit the imputation of a third party's negligence to the employer only where there has been a breach of some contractual duty owed by the third party to the employer. See Hopson v. Texaco, Inc., 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed. 2d 740 (1966) ; Sinkler v. Missouri Pacific R. R., 356 U.S. 326, 78 S.Ct. 758, 2 L. Ed.2d 799 (1958) ; Payne v. Baltimore & Ohio R. R., 309 F.2d 546 (6th Cir.), cert. denied, 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1962).

Accordingly, we conclude that the District Court committed no error in withdrawing the case from the jury and entering a directed verdict for the defendant on the plaintiff's cause of action seeking recovery under the Jones Act.

One problem remains, however. In addition to seeking recovery under the Jones Act, the initial complaint in this case also sought recovery under the wrongful death and survival statutes of Ohio and West Virginia for breach of the warranty of seaworthiness imposed by the general maritime law. On motion of the defendant, and upon the authority of Gillespie v. United States Steel Corp., 321 F.2d 518 (6th Cir. 1963), affirmed, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), the District Court ordered the plaintiff to strike from her complaint all allegations relating to recovery under the state wrongful death and survival laws for breach of the maritime warranty of seaworthiness. At the time the District Court's order was clearly correct. The rule established in Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686 (1930), and followed in Gillespie v. United States Steel Corp., *supra*, was that the Jones Act, by providing a right of action for the death of a seaman negligently killed in the course of his employment, covered the entire field of such liability and supersedes the operation of all state statutes dealing with the subject.

■ However, during the pendency of this appeal, the Supreme Court held for the first time that a cause of action for wrongful death arising out of a breach of the maritime warranty of seaworthiness does lie under the general maritime law, and thus, by overruling ancient precedent (The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886)), has created a new federal remedy for the wrongful death of seamen. Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Plaintiff contends that, in light of the Supreme Court's decision in *Moragne*, the District Court's order to strike the disputed portions of her complaint was error and that she should now have an opportunity to amend her complaint to assert her right of recovery under the death and survival statutes of Ohio and West Virginia. We disagree. We view the narrow issue before us as whether the creation by *Moragne* of an additional *federal* remedy for wrongful death disturbs the prior rule of *Lindgren* and *Gillespie* that as between the federal remedy for wrongful death provided by the Jones Act and the state wrongful death statutes, the Jones Act federal remedy is paramount. We hold that it does not. See Moragne v.

States Marine Lines, *supra* at 398, n. 12, 90 S.Ct. 1772.

Whether the plaintiff could now, some eight years after the cause of action arose, institute an action alleging a breach of the warranty of seaworthiness and founded upon the federal remedy newly created by *Moragne* is a question not now before us and upon which we express no view. We do hold, however, that *Moragne* does not require the plaintiff to be given another opportunity to assert a cause of action seeking recovery under the death and survival statutes of Ohio and West Virginia.

The judgment of the District Court is affirmed.