NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0728n.06

No. 09-1017

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Nov 06, 2009**

LEONARD GREEN, Clerk

DOUGLAS WILLIAMS,

    Plaintiff-Appellant,

v.

GRAND TRUNK WESTERN RAILROAD,
INCORPORATED,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: MARTIN, ROGERS, and COOK, Circuit Judges.

ROGERS, Circuit Judge. Plaintiff, a railroad worker who was injured when he slipped on ice and snow in the course of his duties, sued his employer under the Federal Employers' Liability Act. He alleges that the employer was negligent because it did not remove snow from the area in which he was working and because malfunctioning equipment contributed to his injury. Plaintiff has not presented sufficient evidence of negligence regarding either snow-removal policies or the allegedly defective equipment. He has also failed to present sufficient evidence that the defendant had notice of any specific dangerous condition or of any equipment failure. We therefore affirm the district court's grant of summary judgment to defendant.

**BACKGROUND**

In January of 2005, plaintiff Douglas Williams was an employee of Grand Trunk Western Railway (Grand Trunk). On January 8, Williams was assigned to drive an engine from Flat Rock

Yard to Stanley Yard in Wallbridge, Ohio, connect an engine to three other engines there, and use the four connected engines to take a train back to Flat Rock Yard. According to Williams, it had snowed that night, and there was ice on top of snow in Stanley Yard. Connecting the engines required Williams to stand on the railroad track bed between the two engines and to plug a large electrical cable similar to an extension cord, called an "MU" cable, originating from one engine into the other engine. The MU cables are large—weighing approximately fifteen to twenty pounds—and to plug them in, one must open a spring-loaded cover and then connect the cord to the plug beneath the cover. Williams testified that on January 8, the spring-loaded cover was not functioning on one of the plugs, such that the plug was full of snow, and he had to remove the snow before plugging in the MU cable. He testified that, after removing the snow, "as [he] was trying to push this MU Cable into the receiving receptacle, on the third locomotive . . . [he] slipped." Williams then steadied his feet, dug more snow out of the receptacle, and successfully connected the MU cable. Williams alleges that his slip caused him lower back injuries that have prevented him from returning to work since January 28, 2005.

Stanley Yard is not owned by defendant Grand Trunk, but rather by CSX Transportation. Evidence regarding the snow-removal and related policies at Stanley Yard comes from the depositions of two CSX employees, Arthur Maust and Eugene Payne. Maust testified that CSX procedures in Stanley Yard required snow removal from the roadways and the switching leads, as needed. He stated that CSX did not regularly remove snow from the tracks or nearby areas, but that employees do walk in these areas. Maust did not believe that removing snow from such areas was

reasonable or necessary. He further testified that railroad employees working in Stanley Yard were provided with radios and nonslip footwear, and that if an employee noticed an unsafe condition, the employee could radio track department personnel who would apply salt and gravel to the slippery area as necessary. Williams was not wearing his rubber boots and did not advise anyone regarding the icy ground conditions or the snow-filled cover. Payne testified that it was not unusual for there to be snow on the ground in January, and that when there was snow, CSX removed the snow from the roadways and the switches. For the remainder of the rail yard, employees were provided with non-slip footwear. Payne did not recall any complaints or any problems related to employees walking on snow, nor had he ever seen snow in an MU box or heard complaints regarding such a problem.

Williams filed suit against Grand Trunk in district court on April 7, 2007, pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. Grand Trunk moved for summary judgment, and on December 10, 2008, the district court issued a written order granting the motion, holding that "(1) Defendant was not negligent; and (2) Defendant had no notice of any unsafe condition claimed by plaintiff." Williams timely appealed on January 5, 2009.

**ANALYSIS**

**A.      Snow Removal**

Williams's snow-removal claim could be construed in two ways: as arguing that CSX had inadequate general policies, or as arguing the CSX did not respond reasonably to a specific dangerous condition where Williams was working. Construed either way, the claim fails.

To the extent that Williams argues the inadequacy of CSX snow-removal policies, he has failed to create a genuine issue of material fact with respect to negligence claim under FELA.[1] FELA provides that "a railroad has a duty to provide its employees with a reasonably safe workplace; this does not mean that a railroad has the duty to eliminate all workplace dangers, but only the duty of exercising reasonable care to that end." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 269 (6th Cir. 2007) (internal quotation marks omitted); *see also* 45 U.S.C. § 51. A railroad breaches this duty if it "knew, or by the exercise of due care should have known, that prevalent standards of conduct were inadequate to protect [the plaintiff] and similarly situated employees." *Urie v. Thompson*, 337 U.S. 163, 178 (1949) (internal quotation marks omitted). CSX employees testified that if Williams faced any unsafe conditions at Stanley Yard, he could have radioed track department personnel, who would have remedied any such condition. Williams has not provided any evidence to suggest that this policy was not in place, or that it would not have been sufficient to protect him from any unsafe conditions if he had radioed the track department. CSX trainmaster Payne testified that he did not recall any complaints about snow buildup or bad walking conditions around the time that Williams was injured, and Williams did not produce other evidence suggesting that CSX's snow-removal procedures were inadequate to protect the employees working in Stanley Yard. Like the plaintiff in *Van Gorder*, Williams has "provided no specific information to explain why [the

---

[1]Grand Trunk is responsible for any negligence at the CSX yard because, "[a]s the Supreme Court and this circuit have recognized, a third party's negligence in providing a safe workplace for an employer's workers may be imputed to the employer where that third party has a contractual relationship with the employer and the employee is acting in the course of her employment on the third party's premises." *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 450 (6th Cir. 2001).

defendant's conduct] was not reasonable." 509 F.3d at 270. We have also held than an expert's report was not sufficient to create a genuine issue of material fact where the report was silent on "what type of inspection . . . would have been 'adequate.'" *Borger v. CSX Transp., Inc.*, 571 F.3d 559, 567 (6th Cir. 2009). Williams has thus failed to provide sufficient evidence for a jury to find in his favor. *See Van Gorder*, 509 F.3d at 268 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (summary judgment standard).

The present case is distinguishable from cases where the defendant failed to remove snow from driveways or concrete work areas. *See, e.g.*, *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 446 (6th Cir. 2001);[2] *McDonald v. Ne. Ill. Reg'l*, 249 F. Supp. 2d 1051, 1052 (N.D. Ill. 2003). CSX employees testified that they did, in fact, remove snow from roadways, and they outlined a reasonable procedure for dealing with snow-related dangers in the rest of Stanley Yard. When Williams slipped, he was standing astride a railroad track, on one stretch of the approximately 30 to 35 miles of track within Stanley Yard. While the simple fact that an employer failed to remove snow and ice from designated walkways or paved roadways might raise a triable issue of negligence, the failure of a railroad to remove snow or ice from an entire rail yard does not raise such an issue, at least where the railroad has in place policies to remedy any specific dangerous condition of which

---

[2]*Rannals* arose under the Jones Act, 46 U.S.C. § 30104. 265 F.3d at 445. The standards for recovery under the Jones Act and FELA are the same, as "the Jones Act makes applicable to seamen the substantive recovery provisions of the older FELA." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990).

they are given notice. Williams has thus failed to create a genuine issue of material fact with respect to a negligence claim regarding the snow-removal procedures at Stanley Yard.

If, instead, Williams's claim is construed as arguing negligence with respect to a location-specific dangerous condition, he has failed to produce sufficient evidence that CSX had notice of that condition. A railroad's failure to cure specific dangerous conditions, including failures to remedy conditions created by winter weather, may constitute negligence. *See, e.g.*, *Barrett v. Toledo, Peoria & W. R.R. Co.*, 334 F.2d 803, 803-04 (7th Cir. 1964). A defendant, however, cannot be held negligent "absent proof that such defect was known, or should or could have been known, by defendant, with opportunity to correct it." *Miller v. Cincinnati, New Orleans & Tex. Pac. Ry. Co.*, 317 F.2d 693, 695 (6th Cir. 1963). Williams has not produced sufficient evidence such that a reasonable jury could conclude that CSX knew or had reason to know of the condition of the specific track on which he was working. Williams suggests that notice of this type can be inferred from the fact that CSX had an approximately ten-foot tower that could see most of the track where the defendant was working. Williams, however, has produced no evidence that anyone was in the tower at the relevant time, that anyone had observed the relevant track, or that any dangerous condition would have been visible from the tower. Nor had anyone complained about this location or any other location as being particularly slippery. Indeed, the only person known to have observed the track was Williams, and he did not report any dangerous conditions to CSX. No reasonable jury could conclude from these facts that CSX knew or had reason to know of any location-specific,

dangerous condition. Grand Trunk is therefore entitled to summary judgment under either reading of Williams's snow-removal allegations.

**B.      The MU Receptacle**

Williams has also not provided sufficient evidence of either negligence or notice regarding the allegedly defective MU receptacle. Williams's evidence regarding negligence is not sufficient because he has not presented any evidence linking the allegedly snow-filled MU receptacle to any action by the defendant. He testified that he "had no idea of when [the MU] lid was ever opened or whoever handled that locomotive." Without additional evidence, no reasonable jury could find that the defendant's negligence was responsible for the spring-loaded receptacle's becoming snow-filled.[3] Further, Williams has not produced any direct evidence of notice and, from all accounts, the malfunctioning MU receptacle presented a previously unknown problem. In *Van Gorder*, this court affirmed the grant of summary judgment in part because no witness had ever encountered the relevant problem before the incident that caused the plaintiff's injury. 509 F.3d at 271. This court concluded that the defendant had no reason to know that such a defect existed or that it might cause injury. *Id.* Similarly, no witnesses in this case had ever seen an MU receptacle become jammed open by snow, and thus there is no basis on which a jury could conclude that Grand Trunk knew or should have known that this was a danger. As with the slippery track, the only person who ever

---

[3]The doctrine of res ipsa loquitur applies in FELA cases, *Chesapeake & O. Ry. Co. v. Smith*, 42 F.2d 111, 113 (6th Cir. 1930), but Williams did not raise this issue on appeal. Further, this doctrine is not applicable here because Williams has not presented sufficient evidence to show that it was improbable that there was any cause other than the negligence of the employer or that this is the kind of accident that does not ordinarily occur absent negligence by the employer. *See id.*

observed the allegedly malfunctioning equipment was Williams, and he did not notify anyone of this problem. Williams has thus failed to produce sufficient evidence that any "defect was known, or should or could have been known, by defendant, with opportunity to correct it." *Miller*, 317 F.2d at 695.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment for the defendant.