**James SINCLAIR, Plaintiff–Appellee,**

v.

**LONG ISLAND RAILROAD, Defendant–Appellant.**

**No. 302, Docket 92–7532.**

United States Court of Appeals, Second Circuit.

Argued Oct. 14, 1992.

Decided Feb. 3, 1993.

Steven J. Ahmuty, Jr., New York City (Bower & Gardner, New York City, of counsel), for defendant-appellant.

Francis X. Casale, Jr., Melville, NY, for plaintiff-appellee.

Before: ALTIMARI and McLAUGHLIN, Circuit Judges, and SPATT, District Judge.[*]

* Honorable Arthur D. Spatt, United States District Judge for the Eastern District of New York, sitting by designation.

McLAUGHLIN, Circuit Judge:

This is an action under the Federal Employers' Liability Act ("FELA" or the "Act"), 45 U.S.C. §§ 51–60 (1988). The defendant Long Island Railroad ("LIRR" or "Railroad") appeals from (1) a judgment for plaintiff James Sinclair, an employee of the LIRR, entered after a jury trial in the United States District Court for the Eastern District of New York (Leonard D. Wexler, *Judge*), and (2) an order denying LIRR's motion for judgment as a matter of law after trial or a new trial on all the issues.

The LIRR contends that the district court erred when it (1) imputed notice of a defective condition to the LIRR as a matter of law, (2) refused to instruct the jury on the requirement of notice, and (3) erroneously charged the jury on damages. We agree on all points and, accordingly, reverse and remand for a new trial.

## BACKGROUND

In 1986, while walking in a dark train tunnel, Sinclair fell over a depression in a bent trap door covering a manhole. Sinclair immediately experienced "sharp low back pains" and could not stand straight or walk normally. He was out of work for almost three weeks, during which time he was treated and examined twice by a private physician and three times by LIRR physicians.

Sinclair returned to work but, during 1987, was often given light duty because of his back pain. From July to December 1987, while continuing to work, Sinclair was treated by a chiropractor. At Sinclair's request, LIRR then placed him on its own "Work Hardening" program, a physical therapy regimen, which he attended three times a week through January 1988. Between February 1988 (when he left the program) and July 1988, Sinclair did not receive any treatment for his back.

On July 5, 1988, Sinclair was lifting a 120-pound third-rail drill with two co-workers when he felt back pain. According to Sinclair, this pain was no sharper or different than the pain he had felt constantly since 1986. He immediately stopped working and reported this incident to a LIRR supervisor. From July 7, 1988 until early 1989, an orthopedist treated Sinclair with medication, physical therapy, and a back brace. Sinclair continued to work and to visit the LIRR Medical Department when he was unable to work.

In February 1989, a neurosurgeon began treating Sinclair. From March 1989 to November 1989, Sinclair did not work, but did attend physical therapy three times a week. At the direction of LIRR physicians, Sinclair stopped that therapy and resumed the "Work Hardening" program. In November 1989, the LIRR instructed Sinclair to return to work, which he did, working from November 1989 to June 1990.

In May 1990, a Magnetic Resonance Image test ordered by his neurosurgeon revealed a herniated disc and Sinclair underwent a laminectomy on August 30, 1990. Except for a two-week attempt in June 1991, Sinclair never worked after June 1990 but again engaged in physical therapy and attended the "Work Hardening" program. At the time of his March 1992 trial, Sinclair was still employed by LIRR and receiving sick pay.

Sinclair commenced this FELA action in September 1989, alleging a single theory of liability: the LIRR breached its duty to exercise reasonable care in providing a safe workplace. The claim was limited to the September 1986 incident with the manhole cover, and the parties agree that, as a matter of law, the LIRR was not liable for any negligence relevant to the third-rail drill accident of July 5, 1988.

The only unsafe condition alleged in his complaint was the defective condition of the manhole cover of which Sinclair claimed the LIRR had notice. He fine tuned this claim in his answers to LIRR's interrogatories:

(a) Actual notice is claimed in that the [LIRR], its agents, servants and/or employees created the conditions complained of.

(b) Constructive notice is claimed in that the condition complained of existed for an unreasonably long period of

time prior to the occurrence at issue. It is not presently known how long the condition existed prior to September 11, 1986.

At the close of the case, the LIRR moved for judgment as a matter of law based on Sinclair's failure to prove notice. The district court denied this motion without comment; then the court ruled that an instruction on notice requested by the LIRR was unnecessary, "in view of the fact this happened exclusively on railroad property and it was a metal door that was out of line within a tunnel and enclosed property of the railroad, and there is no proof whatsoever that some stranger or trespasser had anything to do with it. . . ." The court also refused to instruct the jury that foreseeability of harm is an essential element of a FELA claim.

The jury returned a $1,025,000 verdict for Sinclair to be reduced, however, by the 25% attributable to his own fault. The LIRR moved for (1) a judgment as a matter of law, arguing that there was no proof from which a jury could reasonably find that the LIRR had actual or constructive notice of the manhole condition, or (2) in the alternative, a new trial, because of the court's refusal to instruct the jury on the requirement of foreseeability and notice in FELA cases. The LIRR also contended that the verdict was excessive and speculative and, moreover, that the district court erred in failing (1) to charge the jury not to award economic damages in the form of future lost earnings, and (2) to define "permanent disability."

Denying LIRR's post-trial motion, the district court determined "that notice to defendant can be imputed where plaintiff alleged, and the jury found, that he tripped over a set of trap doors. . . . Therefore, it was unnecessary to charge the jury on the question of notice." The court also rejected LIRR's contentions that the jury should have been specifically instructed that its award for "permanent disability" should not include compensation for future lost earnings, and that the damage award was excessive.

## DISCUSSION

The LIRR argues that the district court erred in denying its trial motion for judgment as a matter of law and its post-trial renewal of that motion. Its core point is that Sinclair never proved that the LIRR had actual or constructive notice of the bent trap door.

Even if it is not entitled to judgment, it urges, alternatively, that a new trial is required because of the district court's failure to instruct the jury on notice as required in FELA cases. The Railroad also seeks a new trial on the issue of damages which it claims were the result of misleading jury instructions.

### Liability

We have held that "FELA is not an insurance program." *O'Hara v. Long Island R.R.*, 665 F.2d 8, 9 (2d Cir.1981) (per curiam). Rather, it makes railroads liable to employees who suffer "injury or death resulting in whole or in part from the negligence of . . . [the] carrier, or by reason of any defect or insufficiency, due to its negligence, in its . . . roadbed . . . or other equipment." 45 U.S.C. § 51. The Act requires an employer to provide its employees with a reasonably safe place to work, *Shenker v. Baltimore & O.R.R.*, 374 U.S. 1, 7, 83 S.Ct. 1667, 1671, 10 L.Ed.2d 709 (1963), and this includes the duty to maintain and inspect work areas. *Salamon v. Motor Vessel Poling Bros. No. 11, Inc.*, 751 F.Supp. 343, 345 (E.D.N.Y.1990). The scope of this ongoing duty is clear: "An employer breaches its duty to provide a safe workplace when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees." *Gallose v. Long Island R.R.*, 878 F.2d 80, 84–85 (2d Cir.1989) (citing *DeChico v. Metro–North Commuter R.R.*, 758 F.2d 856, 862 (2d Cir.1985); *Lindauer v. New York Central R.R.*, 408 F.2d 638, 640 (2d Cir.1969)).

■ While there is "a considerably more relaxed standard of proof" for determining negligence in FELA cases, *Lang v. Metro–North Commuter R.R.*, 1988 WL 80171, at *1 (S.D.N.Y. July 21, 1988) (citing *Rogers v.*

*Missouri Pacific R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)), and "a strong federal policy in favor of letting juries decide [these] cases," *O'Hara,* 665 F.2d at 9, FELA does not make an employer strictly liable for workplace injuries and, therefore, requires that "[c]laimants must at least offer some evidence that would support a finding of negligence." *Id.; see also Robert v. Consolidated Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987) ("Plaintiffs are ... required to prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation."). Significantly, the essential element of reasonable foreseeability in FELA actions, *Gallick v. Baltimore & O.R.R.,* 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963), requires proof of actual or constructive notice to the employer of the defective condition that caused the injury. *See Gallose,* 878 F.2d at 85 ("The catalyst which ignites [the duty to provide a safe workplace] is knowledge, either actual or constructive.").

■ Here, Sinclair sought to impute notice to the LIRR, as a matter of law, simply because the Railroad "exclusively owned, operated, maintained and controlled" the train tunnel. The district court adopted Sinclair's sweeping notion of liability and gave no instruction on notice. After the verdict, in denying LIRR's post-trial motions, the district court apparently concluded that some kind of notice had to be proven; it found the requisite notice by virtue of the Railroad's duty to inspect and maintain the tunnel in a reasonably safe condition. This was error.

We have held that "whether the railroad used reasonable care in furnishing its employees a safe place to work is normally a question for the jury. *Ragsdell v. Southern Pacific Transp. Co.,* 688 F.2d 1281, 1283 (9th Cir.1982).... [And] the right of the jury to pass on this issue must be liberally construed." *Gallose,* 878 F.2d at 85 (citing *Johannessen v. Gulf Trading & Transp. Co.,* 633 F.2d 653, 656 (2d Cir. 1980); *Eggert v. Norfolk & Western Ry.,* 538 F.2d 509, 511 (2d Cir.1976)). In this case, as in *Gallose,* "exactly what the LIRR knew or should have known, and whether the LIRR exercised reasonable care in light of its knowledge, are questions of fact upon which reasonable jurors could differ." *Gallose,* 878 F.2d at 86. Therefore, as in *Gallose,* the district court should properly have charged the jury on the legal implications of notice.

■ Although this error is fundamental and requires reversal, we reject LIRR's argument that we should reverse with instructions to dismiss the complaint because "there is a complete absence of probative facts to support the conclusion reached by the jury." *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946), *quoted in Smith v. National R.R. Passenger Corp.,* 856 F.2d 467, 469 (2d Cir.1988). To go that far, "we must be satisfied, without the benefit of credibility findings, that the evidence is so one-sided and contrary to the jury's verdict that there is only one reasonable conclusion as to the proper judgment." *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1187 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Here, Sinclair introduced several photographs of the bent trap door to demonstrate its defective condition. The pictures were taken shortly after the accident, and having examined them, we conclude that a jury could reasonably infer from them that the condition had existed long enough to impart constructive, if not actual, notice of the defect. *See, e.g., Taylor v. New York City Transit Auth.,* 48 N.Y.2d 903, 904, 424 N.Y.S.2d 888, 889, 400 N.E.2d 1340, 1341 (1979); *Davis v. County of Nassau,* 166 A.D.2d 498, 499, 560 N.Y.S.2d 696, 697–98 (2d Dep't 1990); *Karten v. City of New York,* 109 A.D.2d 126, 127–28, 490 N.Y.S.2d 503, 504 (1st Dep't 1985). There is, therefore, a jury question. In arriving at this conclusion, we observe that the district court, in its post-trial decision, suggested that Sinclair's jury verdict could be sustained on a "failure to inspect" theory. Sinclair also presses this on appeal. While, as an abstraction, the Railroad might have been liable on the ground that it had a non-delegable duty to inspect, regardless of notice, *see Cazad v. Chesapeake & Ohio Ry.,* 622 F.2d 72, 75

(4th Cir.1980) (under FELA, employer has non-delegable duty to inspect workplace and to take reasonable precautions to protect its employees from possible harm), the verdict for Sinclair cannot be sustained on a theory that was never presented to the jury. We fully agree with the LIRR that "[w]here the plaintiff tries his case on one theory in the District Court, without any indication of other possible theories, he will not ordinarily be heard to press other theories on appeal." *Browzin v. Catholic Univ. of America,* 527 F.2d 843, 849 n. 10 (D.C.Cir.1975); *see also Trans-world Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1565 (Fed.Cir.1984) (where plaintiff urged new liability theory never presented to the jury, Court affirmed district court's holding that "[t]his is not permitted"). Thus, we remand for a new trial.

*Damages*

■ The LIRR also assails the verdict as tainted by the district court's refusal to tell the jury that any award for "permanent disability" should not include future lost earnings. We find that the district court improperly instructed the jury that future lost earnings are *not* recoverable in this case.

The evidence established that Sinclair's back injury was severely disabling. Indeed, the medical experts for both sides agreed that Sinclair was totally disabled from doing any "laboring work." Sinclair's expert characterized this as a "permanent disability." No one, however, went so far as to state that Sinclair was utterly and permanently unemployable in any capacity.

Sinclair's economist testified about future economic loss, but limited it to "future lost wages" only, and assumed that Sinclair would not earn another penny for the rest of his life. The economist never addressed the issue of "impairment of earning capacity" at all. After permitting this testimony, the district court indicated that it would not charge the jury on "future lost wages" because they are not recoverable. Yet, after making this ruling, the court permitted Sinclair's counsel to sum up to the jury on the issue of damages, in which he ignored the distinction between "future lost wages" and "future lost earning capacity."

The district court then instructed the jury,

if you find that plaintiff is entitled to recover, ... [t]he plaintiff is entitled to recover a sum of money which can justly and fairly compensate him for all harms and losses resulting from the injuries he sustained including, one, past pain and suffering; two, future pain and suffering; three, permanent disability.

Following the charge, the LIRR requested that the jury "be instructed that they cannot award future loss of earnings" and that the court explain to the jury that the term "permanent disability," as used in the charge, means "permanent physical disability" only. The district court declined to charge either point. The jury then returned a non-itemized award, which nearly matched the projection of "future economic loss" made by Sinclair's economist, who had testified extensively about future lost wages.

The jury should have been instructed that, if Sinclair sustained his burden of proof, it could make an award for future lost earnings. *See* Leonard B. Sand et al., 4 *Modern Federal Jury Instructions (Civil)* § 89.04, at 89–58 (1991) [hereinafter *Jury Instructions*]; *see also Chesapeake & O. Ry. v. Carnahan,* 241 U.S. 241, 244, 36 S.Ct. 594, 595, 60 L.Ed. 979 (1916) (FELA case). Because Sinclair is not totally disabled, the district court should have focused the instruction on the impairment of Sinclair's earning capacity and, more precisely, on the differential between what he could earn, with his disability, and what Sinclair would have earned were he not disabled. *See Jury Instructions* § 89.04, at 89–64; *see also Conte v. Flota Mercante Del Estado,* 277 F.2d 664, 669 (2d Cir.1960) (Friendly, J.). The LIRR would be free to introduce testimony about the types of employment that Sinclair, though disabled, could reasonably engage in, and the jury would then be instructed to reduce its award by these anticipated earnings if it found this testimony credible. In sum, the

court's failure to clarify the measure of damages for future lost earnings warrants reversal and a new trial on damages.

## CONCLUSION

Accordingly, the judgment of the district court is reversed, and the case is remanded for a new trial on all issues.