### George DERIENZO Plaintiff,

v.

### METROPOLITAN TRANSPORTATION AUTHORITY and Metro–North Commuter Railroad, Defendants.

#### No. 01 Civ. 8138(PKL).

United States District Court,
S.D. New York.

Dec. 13, 2005.

---

Cahill, Goetsch & Maurer P.C., Croton on Hudson, NY, Ira M. Maurer, for Plaintiff George Derienzo.

Hoguet Newman & Regal, LLP, New York City, Laura B. Hoguet, Ira J. Lipton, Luisa K. Hagemeier, for Defendants Metropolitan Transportation Authority and Metro–North Commuter Railroad.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff, George Derienzo, brings this action against defendants Metropolitan Transportation Authority ("MTA") and Metro–North Commuter Railroad ("Metro–North") pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (2000), alleging personal injuries sustained from slipping and falling on a hazardous condition while on defendant Metro–North's property. Plaintiff alleges specifically that while working as an MTA police officer, he slipped on debris that had collected at the top of a staircase and, as a result, fell down the flight of stairs, injuring his back. Plaintiff claims that defendants failed to exercise reasonable care in informing him about, and protecting him from, a hazardous condition of which they were aware. Defendants now move for summary judgment[1] on two grounds:

---

1. The disposition of this motion was reassigned to this Court after the death of the Honorable Constance Baker Motley on September 27, 2005.

first, that liability has not been established because the alleged accident was unforeseeable; and, second, that damages have not been established because plaintiff has failed to demonstrate that his injuries were caused by the fall. For the reasons set forth below, defendants' motion is granted and plaintiff's claims are dismissed.

## BACKGROUND

### I. *Local Rule 56.1 Requirements*

■ A party moving for summary judgment in this district is bound by Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1 Statement"), which requires a party to submit along with its other motion papers a separate statement of numbered material facts "as to which the moving party contends there is no genuine issue to be tried."[2] S.D. & E.D. N.Y. R. 56.1(a). Correspondingly, the opposing party is required to submit a counterstatement responding to each numbered paragraph in the moving party's statement, and any additional paragraphs setting forth other material facts as to which the opposing party contends there is a genuine issue to be tried ("Counterstatement"). *Id.* at (b). While defendants included a Rule 56.1 Statement with their motion papers, plaintiff failed to file the required Counterstatement. Local Rule 56.1 provides that where the opposing party does not specifically controvert an asserted material fact of the moving party, such fact is deemed to be admitted for purposes of the motion. *Id.* at (c). The Second Circuit held in *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003), that uncontroverted assertions of fact shall be deemed to be admitted: "If the opposing party ... fails to controvert a fact ... set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *See also Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A.*, No. 03 Civ. 9141, 2004 WL 1933621, at *8 (S.D.N.Y. Aug. 30, 2004) (Leisure, J.) ("[I]f ... a counter statement is not filed, the facts in the moving parties['] Rule 56.1 statement are deemed admitted by the opposing party." (citing Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir.1998))).[3]

---

**2.** This requirement, of course, is in addition to the requirements of Federal Rule of Civil Procedure 56.

**3.** The *Giannullo* decision co-exists with a prior Second Circuit decision which held that a district court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules" and thus may overlook a party's failure to file a Rule 56.1 Statement or Counterstatement, and instead conduct its own review of the record for the purpose of discerning whether genuine issues of material fact exist. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001) (citing *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir.2000)). Some district courts have followed *Holtz's* holding allowing district courts to look past such filing failures, *see, e.g., Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F.Supp.2d 448, 453 (S.D.N.Y. 2005) ("[D]espite noncompliance with the Lo-

cal Rules, we will accept and consider defendants' submission."), while others have cited *Giannullo* to hold that uncontroverted assertions of fact will be deemed admitted, *Park v. Trs. of 1199 Seiu Health Care Employees Pension Fund*, No. 04 Civ. 5228, 2005 WL 2254511, at *2 n. 4 (S.D.N.Y. Sept. 15, 2005) (stating that where "[t]he plaintiffs did not file a Statement in response as required by Local Rule 56.1(b)[,] .... the facts in the defendants' December 9, 2004 Statement will be deemed admitted if they are supported by the record"); *Landpen Co. v. Maryland Casualty Co.*, No. 03 Civ. 3624, 2005 WL 356809, at *1 (S.D.N.Y. Feb. 15, 2005) ("As neither party has submitted a sufficient Rule 56.1 counterstatement, and because defendant's objections are without merit, the facts set forth in the parties' statements are deemed established."). This Court will follow the more recent holding in *Giannullo* that uncontroverted facts "*will* be deemed admitted." *Giannullo v.*

■ Notwithstanding the Court's admission of defendants' uncontroverted facts, defendants' motion will not be automatically granted, because under *Giannullo*, " '[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law.' " 322 F.3d at 140 (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir.2001)). The *Giannullo* Court went on to state that because " 'a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record,' " *id.* (quoting *Holtz*, 258 F.3d at 74), defendant remains obligated to demonstrate that no genuine issue of material fact exists to warrant a trial, *id.* If defendant fails to set forth adequate assertions of undisputed facts, *supported by admissible evidence in the record,* summary judgment must still be denied, as plaintiff "is not required to rebut an insufficient showing." *Id.* at 140–41; *see 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 45–46 (2d Cir.2005) (noting that where a defendant moving for summary judgment, who does not maintain the burden of proof at trial, fails to show an absence of evidence supporting plaintiff's claims, and plaintiff does not oppose the motion with any evidence, summary judgment should be denied, " 'for the non-movant is not required to rebut an insufficient showing' " (quoting *Giannullo*, 322 F.3d at 140–41)); *Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004) ("This Court has made clear, however, that

where the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.' " (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir.2001))).

However, after holding that defendants' assertions were required to be supported by admissible evidence in the record, the *Giannullo* Court addressed in a footnote the dissent's argument that the majority's reading of Local Rule 56.1 was inconsistent with Rule 56 and the Supreme Court's decision in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *Giannullo*, 322 F.3d at 141 n. 2. The Court's majority agreed with the dissent's position that under *Celotex* "a defendant may move for summary judgment on the ground that the plaintiff has failed to adduce any evidence of an element of plaintiff's claim, and if the plaintiff fails in response to contest this assertion or adduce such evidence, defendant, without more, will prevail." *Id.* However, it held that Local Rule 56.1's requirement that a movant's assertions be supported by admissible evidence in the record was "wholly distinguishable" from the case before it because defendant was making *affirmative assertions* in his Rule 56.1 Statement to support summary judgment in his favor.[4]

---

*City of New York,* 322 F.3d 139, 140 (2d Cir.2003) (emphasis added).

4. The plaintiff in *Giannullo* had brought suit under 42 U.S.C. § 1983 against defendant City of New York on the ground that his arrest on drug possession charges had been made without probable cause. *Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir.2003). Defendant's affirmative assertions

in support of the contention that probable cause existed were that

> there had been prior "reports of drug activity in the area" that gave context to what the police observed, and, second, that the police arrested [the individual to whom plaintiff had allegedly given drugs] prior to arresting Giannullo and therefore, in some collective sense, had knowledge before arresting Giannullo that an illicit bottle of

*Id.* Because defendant was making affirmative assertions, rather than moving "on the ground that the plaintiff ha[d] failed to adduce any evidence of an element of plaintiff's claim," it was required to support its assertions with admissible evidence. *Id.*

Some district courts in the Second Circuit have since followed the *Giannullo* Court's distinction between a movant that makes affirmative assertions, such as the *Giannullo* defendants' assertions that would justify a facially defective arrest, and a movant that seeks summary judgment on the ground that the non-movant failed to produce any evidence supporting an element of its claim. *See, e.g., Feurtado v. City of New York et al.,* 337 F.Supp.2d 593, 599 (S.D.N.Y.2004) (holding that while *Giannullo* stated that a summary judgment motion should be denied where the movant does not meet its burden by producing admissible evidence, the decision "did not purport to contradict *Celotex's* holding that in fact a movant is not required to provide admissible evidence in cases where the movant does not bear the burden of proof on the issue that is the subject of its motion"); *Webster v. The City of New York et al.,* 333 F.Supp.2d 184, 207 (S.D.N.Y.2004) (citing *Giannullo* in support of the proposition that where "[d]efendants ... have not affirmatively asserted the existence of a particular factual scenario in support of their motion for summary judgment ... but have, instead, sought to demonstrate that there is an absence of evidence to support Plaintiffs' claim by outlining the purported flaws" in plaintiffs' claim, defendants were not required to adduce admissible evidence). Other district courts have not addressed the *Giannullo* Court's distinction and instead cite *Giannullo* for the proposition

that a summary judgment motion must be denied if the movant fails to meet its burden of producing admissible evidence in support of its assertions under Local Rule 56.1 *See, e.g., Wilson v. New York City Dep't of Transp.,* No. 01 Civ. 7398, 2005 WL 2385866, at *4, 2005 U.S. Dist. LEXIS 21620, at *10 (S.D.N.Y. Sept. 28, 2005) ("Although Local Rule 56.1(c) provides that non-controverted material facts are to be deemed admitted, when considering an unopposed motion the Second Circuit requires district courts to confirm that factual statements are adequately supported by evidence in the record."); *Rikhy v. AMC Computer Corp.,* No. 01 Civ. 7007, 2003 WL 1618529, at *3 (S.D.N.Y. Mar. 28, 2003) ("In light of the Second Circuit's recent opinion in [*Giannullo,*] this Court notes that each paragraph in defendants' Rule 56.1 Statement relied on by this Court contains 'citation[s] to the admissible evidence of record supporting each [allegedly undisputed] fact.'" (citing *Giannullo v. City of New York,* 322 F.3d 139, 140 n. 2 (2d Cir.2003) (brackets in original))).

In this case, defendant is moving for summary judgment on the ground that, *inter alia,* plaintiff has failed to establish a genuine issue of material fact as to foreseeability, an element of a FELA claim. *See Sinclair v. Long Island R.R.,* 985 F.2d 74, 77 (2d Cir.1993) (stating that in FELA actions, "'[p]laintiffs are ... required to prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation'" (citing *Robert v. Consol. Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987))). Consequently, under *Giannullo,* this Court need only require defendant to point out that plaintiff has failed to proffer any evidence of an element of his claim. *See, e.g., Webster v. The City of New York et al.,* 333

---

methadone had been found on [the other individual's] possession.

*Id.* at 142.

F.Supp.2d 184, 207 (S.D.N.Y.2004) (holding that defendants satisfied their burden in moving for summary judgment " 'by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case" (citing *Pepsico., Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir.2002))). Indeed, defendants have done just that: "Summary judgment is warranted as to liability because plaintiff has not raised a triable issue that defendants could have foreseen his alleged fall, and foreseeability is a necessary element of employer liability under FELA." (Def.'s Mem. Law Supp. Summ. J. 1.) However, as stated above, because some district courts have required movants to cite to admissible evidence in support of their Rule 56.1 Statements without, per *Giannullo's* footnote two, first determining whether it is necessary, the Court will, in an abundance of caution, determine whether the relevant assertions in defendants' Rule 56.1 Statement cite adequately to admissible evidence. The plain language of Local Rule 56.1(d) [5] and a lack of appellate authority addressing the issue post-*Giannullo* further warrants this decision. The Court's analysis follows below.

## II. *Material Facts Asserted to Be Without Dispute*

Plaintiff began working as a Metro–North police officer in 1991 and retired with a disability pension as an MTA police officer on October 9, 2002.[6] (Def.'s Local R. 56.1 Statement of the United States District Cts. for the Southern and Eastern Districts of New York ("Def.'s 56.1") ¶ 1.) He alleges that, while on duty on September 8, 1998, he slipped and tumbled down a flight of steps located at Oak Street on Metro–North property in Mount Vernon, New York (the "Steps"). (Def.'s 56.1 ¶ 3.) Plaintiff further alleges that because of defendants' negligent maintenance or design (Def.'s 56.1 ¶ 3), cans, litter, and tree branches had collected on the Steps (Def.'s 56.1 ¶ 4), causing him to fall (Def.'s 56.1 ¶ 3). As a result of the fall, plaintiff developed a back condition that required him to undergo lumbar fusion surgery on May 4, 1999, which surgery in turn caused a preexisting pituitary tumor to hemorrhage. (Def.'s 56.1 ¶ 3.)

The Steps are located north of the Mount Vernon West train station; they lead from street level up to the railroad's right of way, which sits on top of an embankment. (Def.'s 56.1 ¶ 9.) They do not lead to or come from a building or other structure, and they consist of railroad ties dug into the earth. (Def.'s 56.1 ¶ 10.) The Steps were installed decades ago by one of Metro–North's predecessors in order to allow access to a switching tower that was decommissioned and dismantled by the 1990s. (Def.'s 56.1 ¶ 11.) The section of track to which the Steps lead is easily accessed via the nearby Mount Vernon Yard or the Mount Vernon West train station. (Def.'s 56.1 ¶ 12.)

Plaintiff had used the Steps prior to his fall, but had never complained to anyone or any of defendants' departments about

---

**5.** The text of Local Rule 56.1(d) follows: "Each statement *by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement* of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." S.D. & E.D. N.Y. R. 56.1(d).

**6.** In 1997, the MTA consolidated its Metro–North and Long Island Railroad police forces into one new police force, the MTAPD. *See Greene v. Long Island R.R. Co.*, 280 F.3d 224, 227 (2d Cir.2002), *cert. denied*, 538 U.S. 1031, 123 S.Ct. 2073, 155 L.Ed.2d 1060 (2003). Effective January 1, 1998, all Metro–North police officers, including plaintiff, became MTA employees. *Id.*

the condition of the Steps. (Def.'s 56.1 ¶ 4.) Metro–North's Department of Tracks and Structures ("Structures") oversees, maintains, and repairs bridges, viaducts, and the buildings located on defendants' property. (Def.'s 56.1 ¶ 6.) The buildings include structures at train stations and railyards, such as stairs. (Def.'s 56.1 ¶ 6.) Structures' regular maintenance and repair program includes only those areas that are known to be used, where an employee complains of a hazardous or dangerous condition involving a structure or the absence of a formal structure, or if a worker or operating department reports the need to install a new structure. (Def.'s 56.1 ¶ 14.) If any such complaint or report is made, Structures investigates the complaint, remedies any hazardous condition, and performs any necessary remediation or installation. (Def.'s 56.1 ¶ 14.)

Metro–North's non-Structures employees have not used the Steps since prior to 1998, while Structures employees have not used the Steps since "well prior to 1998." [7] (Weaver Aff. ¶ 13, Sept. 9, 2004.) Structures has neither received any complaint about the Steps' condition, nor any request that the Steps be replaced with new stairs. (Def.'s 56.1 ¶ 15.) Defendant Metro–North maintains electronic and paper records of every reported accident or injury on defendants' property (Def.'s 56.1 ¶ 16) and, except for plaintiff's alleged accident, there is no record of any accident ever occurring on the Steps (Def.'s 56.1 ¶ 17). Defendant Metro–North maintains "Local Safety Committees" and "District Committees" that meet monthly to hear and discuss safety issues within their respective geographical regions. (Def.'s 56.1 ¶ 18.) Since 1997, the MTA has taken and maintained notes of some of the meetings.

7. Paragraph 13 of the Rule 56.1 Statement states specifically that Metro–North's workers "have not used the ... Steps on a *regular basis* since *long before 1998*." (Def.'s 56.1 ¶ 13 (emphasis added).) This assertion of fact cites to two sources in the record: an affidavit submitted by Fred Weaver, the Deputy Director of Metro–North's Department of Track and Structures (Weaver Aff., Sept. 9, 2004), and the deposition of Kevin Gallagher, a Metro–North Signal Maintainer (Gallagher Dep., May 25, 2004).

Mr. Weaver's affidavit states that Structures employees had not used the Steps since "well prior to 1998" (Weaver Aff. ¶ 13, Sept. 9, 2004), and other departments' employees had not used the Steps "since prior to 1998" (Weaver Aff. ¶ 13, Sept. 9, 2004). The assertion in defendants' Rule 56.1 Statement that workers have not used the Steps on a "regular basis since long before 1998" is ostensibly intended to map Mr. Weaver's assertion that Structures employees, a specified *sub-group* of Metro–North employees, had not used the Steps since "well prior to 1998," yet it is arguably misleading given Mr. Weaver's other assertion that non-Structures employees had not used the Steps "since prior to," as distinct from "*well* prior to," 1998.

The Court will treat paragraph 13 of the Rule 56.1 Statement as asserting that all

Structures employees had not used the Steps since "well prior to 1998" and all non-Structures employees had not used the Steps "since prior to 1998." The Court is not aware of a method by which it could quantify the amount of time prior to 1998 that was intended by using the phrases "well prior to" and "since prior to." Regardless, the difference between the two is moot given that defendants, under either phrasing, did not have notice of the Steps' use as of, at least, December 31, 1997 (which would be the last possible date of notice under either phrasing), and notice as of that date is ample to demonstrate a lack of foreseeability as to defendants. *See infra* Part III.

Mr. Gallagher's concession that he used the Steps occasionally (Gallagher Dep. 15:12–15:4, May 25, 2004) does not alter this finding. Mr. Gallagher further stated that he had only visited the area to which the Steps led, on average, once a month (Gallagher Dep. 14:4–14:13, May 25, 2004) and never told anyone that he had ever used the Steps (Gallagher Dep. 15:6–15:11, May 25, 2004). Such use, absent additional evidence that Metro–North superiors were aware of the use, does not constitute notice.

(Streaney Aff. ¶ 7, Sept. 5, 2004.) The Steps are located within the region covered by the Mott Haven Local Safety Committee. (Def.'s 56.1 ¶ 19.) Notes from the Mott Haven Local Safety Committee's meetings and the applicable District Committee's meetings contain no record of any complaint, or any mention whatsoever, of the Steps. (Def.'s 56.1 ¶ 19.)

## DISCUSSION

### I. *Summary Judgment Standards*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The question of whether a fact is material is determined by the underlying substantive law: "[T]he judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. The moving party carries the burden of demonstrating that no genuine issue of any material fact exists, *see Chambers*, 43 F.3d at 36 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (Kaufman, J.)), and, in considering whether the burden is met, a court draws all inferences, and resolves all ambiguities, in favor of the non-movant, *Chambers*, 43 F.3d at 36 (citing *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985)). Once the movant has demonstrated that there is no genuine issue as to any material fact, the non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

Where the non-movant bears the burden of proof at trial, summary judgment should be granted if the non-movant fails to "'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548); *see Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir.1996) (per curiam) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). The non-movant may defeat summary judgment only by producing specific facts that show there is a genuine issue of material fact for trial. The moving party may discharge its burden under Rule 56 by showing—*i.e.*, by "pointing out"—an absence of evidence supporting the non-movant's claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Finally, in assessing the motion before it, the Court is mindful of former Chief Judge Kaufman's admonition that summary judgment "is a drastic device since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." *Heyman*, 524 F.2d at 1320 (citing *Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir.1972)).

### II. *Federal Employers' Liability Act ("FELA")*

▮ Under FELA, a common carrier by railroad is liable to a railroad employee

where the employer's negligence, regardless of how slight, causes the employee's injury. *Traylor v. Metro–North Commuter R.R.*, No. 01 Civ. 1237, 2002 WL 31319923, at *2 (S.D.N.Y. Oct. 16, 2002) (citing *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). The statute provides as follows:

> Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51 (2000).[8] The Second Circuit has held that FELA is neither a strict liability statute, *see Williams v. The Long Island R.R. Co.*, 196 F.3d 402, 406 (2d Cir.1999) (citing *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir.1993)), nor "'an insurance program,'" *Sinclair*, 985 F.2d at 76 (quoting *O'Hara v. Long Island R.R.*, 665 F.2d 8, 9 (2d Cir.1981) (per curiam)), that does not treat an employee's injury as proof of negligence, *see id.* (citing

*Eaton v. Long Island R.R. Co.*, 398 F.2d 738, 741 (2d Cir.1968)). However, the standard of proof in a FELA action is considerably relaxed. *See id.* (citing *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir.1994)). The test is "whether 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury.'" *Ulfik v. Metro–North Commuter R.R.*, 77 F.3d 54, 58 (2d Cir.1996) (Newman, J.) (quoting *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) (citing *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 116, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963))). FELA's conferral of liability upon employers "for injury or death resulting *in whole or in part*," 45 U.S.C. § 51 (2000) (emphasis added), from the employer's negligence has been construed, in light of FELA's "'broad remedial nature,'" to apply to a district court's determination of both negligence and causation.[9] *Williams v. The Long Island R.R. Co.*, 196 F.3d 402, 406 (2d Cir.1999) (quoting *Ulfik*, 77 F.3d at 58 n. 1). As a result of this relaxed standard of review, "an employer may be held liable under FELA for risks that would otherwise be too remote to support liability at common law." *Ulfik*, 77 F.3d at 58 (citing

---

8. This action was previously placed on the suspense calendar pending the Second Circuit's decision in *Greene v. Long Island R.R. Co.*, 280 F.3d 224, 240 (2d Cir.2002), which held that the MTA is a "common carrier" within the meaning of FELA. Consequently, because plaintiff was employed by the MTA at the time of the alleged accident, the MTA is a cognizable defendant in this action. Neither party has addressed the issue of whether Metro–North is a proper defendant under the statute. Because the Court grants defendants' motion on the ground that no genuine issue of material fact has been raised as to foreseeability for both defendants, the Court need not determine whether Metro–North was plaintiff's employer within the meaning of FELA at the time of his alleged accident,

for either employer would be insulated from liability.

9. Other circuit courts limit the application of the "in whole or in part" language to causation only, and then apply common law standards to the duty of care. *See, e.g., Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 598 (6th Cir.2001) ("Whether an employer is negligent is determined under the 'ordinary prudence' standard normally applicable in negligence cases.") (citation omitted); *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir.1997) (en banc); *see also Williams*, 196 F.3d at 406 (citing *Gautreaux*, 107 F.3d at 335).

*Syverson,* 19 F.3d at 826; *Gallose v. Long Island R.R. Co.,* 878 F.2d 80, 86 (2d Cir. 1989)).

■■■■ A plaintiff bringing a FELA action must demonstrate the four common law elements of negligence: duty, breach, foreseeability, and causation. *Hairston v. Long Island R.R. Co.,* No. 00 Civ. 7208, 2003 WL 21254196, at *5 (S.D.N.Y.2003) (citing *Sinclair v. Long Island R.R.,* 985 F.2d 74, 77 (2d Cir.1993) (citing *Robert v. Consol. Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987))). A federal employer maintains a duty under FELA to "provide its employees with a safe workplace." *Ulfik,* 77 F.3d at 58 (citing *Gallose,* 878 F.2d at 84–85); *Wahlstrom v. Metro–North Commuter R.R. Co.,* 89 F.Supp.2d 506, 514 (S.D.N.Y.2000) (Leisure, J.) (quoting *Sinclair,* 985 F.2d at 76). In this Circuit, an employer breaches this duty where " 'it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees.' " *Williams v. The Long Island R.R. Co.,* 196 F.3d 402, 406 (2d Cir.1999) (quoting *Ulfik,* 77 F.3d at 58); *Sinclair,* 985 F.2d at 76 (citations omitted). The question of defendants' negligence, then, turns on foreseeability— *i.e.,* whether a defendant had actual or constructive notice of a potential hazard. *See Ulfik,* 77 F.3d at 58 (citing *Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963)); *Syverson v. Consol. Rail Corp.,* 19 F.3d 824, 826 (2d Cir.1994); *Gallose,* 878 F.2d at 85 ("The touchstone of this negligence inquiry is the issue of foreseeability—whether or not Metro–North knew or should have known of the potential hazard.").

Those Second Circuit opinions in which a district court's grant of summary judgment was reversed demonstrate how little evidence a plaintiff is required to produce to allow his or her claim to be determined by a jury. *See Eggert v. Norfolk & W. Ry. Co.,* 538 F.2d 509, 511 (2d Cir.1976) ("[T]he role of the jury is significantly greater in FELA cases than in common law negligence actions." (citing *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957))). For example, in *Gadsden v. Port Authority Trans–Hudson Corp.,* 140 F.3d 207, 208 (2d Cir.1998), a PATH employee injured his back while mounting a "high-rail vehicle," a vehicle mounted on railroad wheels for the purpose of allowing it to ride on railroad tracks. Plaintiff claimed that he had to stretch his body and stand on tiptoe while pulling himself aboard the vehicle by stepping on a running board and holding a handhold with one hand and a mirror brace with another. *Id.* at 208–09. The district court granted defendant's summary judgment motion on the grounds that plaintiff had failed to demonstrate defendant's breach of its duty to provide a safe workplace by failing to equip the vehicle with lower or additional footboards and handholds. *Id.* at 209. The Second Circuit reversed, finding that because defendant had "actual or constructive knowledge of the location of the handholds and footboards that [were] in plain view on the vehicles which PATH's employees were expected to pilot along PATH's tracks," *id.,* defendant was required to "inspect ... [and] provide a safe workplace," *id.* These duties were triggered because the hazardous condition was in "plain view" and not a "hidden defect." *Id.*

Similarly, in *Ulfik v. Metro–North Commuter Railroad,* 77 F.3d 54, 55–56 (2d Cir.1996) (Newman, J.), a Metro–North employee who worked in an underground railroad tower alleged that he began to experience an extreme headache, a burning sensation in his nose and eyes, and dizziness after inhaling fumes from either paint or solvent that was sprayed in the railroad tunnels. Eight days later, while

walking to a medical examination ordered by defendant, plaintiff slipped down a stairway after experiencing a sudden wave of dizziness. *Id.* at 56. Plaintiff sustained injuries to his back, hip, and knee, the last of which required arthroscopic surgery. *Id.* at 56–57. In reversing the district court's grant of summary judgment in defendant's favor, the Second Circuit held that defendant knew that paint was sprayed in the tunnels near plaintiff's work station on the day he first became dizzy. If defendant knew or should have known that the paint *could* cause injury to an employee, defendant *could* be held liable for negligently failing to take reasonable precautions. *Id.* at 58. Plaintiff's injury was thus foreseeable in light of defendant's direct knowledge that two co-workers located in the same tower as plaintiff also became sick that day. *Id.*

In *Syverson v. Consolidated Rail Corp.,* 19 F.3d 824, 825 (2d Cir.1994), plaintiff, a dispatcher for defendant railroad, was stabbed violently by a non-employee on defendant's property. Plaintiff alleged that the area in and around the site of his stabbing was a known encampment of drug addicts, alcoholics, and other suspicious persons, that defendant was aware of prior criminal incidents involving these suspicious persons, and that defendant failed to provide a safe working environment because it did not rid the property of them. *Id.* The Court again reversed the district court's finding of summary judgment in favor of defendant. It held that undisputed evidence demonstrated that defendant knew the area in question was a magnet for suspicious persons, and that such knowledge raised a fact issue as to whether defendant had furnished plaintiff with a reasonable workplace. *Id.* at 827. The Court rejected defendant's argument that plaintiff's attacker might not have been one of the suspicious persons who had gathered in the area and that, regard-less, the attacker's sudden violent outburst was unforeseeable. *Id.* Citing the U.S. Supreme Court's decision in *Gallick v. Baltimore & Ohio Railroad Co.,* 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), the Court held as follows:

> The plaintiff in *Gallick* was therefore not required to demonstrate specifically that the agent of harm issued from the untended condition on the railroad's property, or that the untended condition could be expected to result in so terrible a harm. [Defendant] can fare no better on this appeal by urging that the trespasser did not come from the weeds area and that no one could reasonably foresee that a trespasser would turn homicidal.

*Syverson,* 19 F.3d at 827. Plaintiff was only required to demonstrate that a genuine issue of material fact existed as to whether defendant was on notice of the condition, *i.e.,* the presence of vagrants, and, if so, " 'whether an employer using reasonable care should have investigated further or taken other steps to inform and protect its employees.' " *Id.* at 828 (quoting *Gallose v. Long Island R.R. Co.,* 878 F.2d 80, 85 (2d Cir.1989)).

### III. FELA Standards as Applied to Defendants' Uncontroverted Assertions of Fact

■ The Court turns to the application of the relevant case law to the uncontroverted assertions of fact before it with the understanding that a FELA claim shall not be dismissed on summary judgment " 'unless there is absolutely no reasonable basis for a jury to find for the plaintiff.' " *Gadsden v. Port Authority Trans–Hudson Corp.,* 140 F.3d 207, 209 (2d Cir.1998) (quoting *Syverson,* 19 F.3d at 828 (citing *Gallick,* 372 U.S. at 120–21, 83 S.Ct. 659)); *see also Syverson,* 19 F.3d at 826 (holding that a jury's right to pass on a fact issue

such as foreseeability must be construed liberally under FELA (citing *Gallose*, 878 F.2d at 85)). Reviewing defendants' alleged undisputed facts under the foregoing case law, the Court finds that defendant has adequately demonstrated that plaintiff has failed to show that there is a genuine issue of material fact as to an essential element of plaintiff's claim, *i.e.*, foreseeability. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[T]he burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Metro–North's Structures employees have not used the Steps "since well prior to 1998" and its non-Structures employees have not used the Steps "since prior to 1998"; Structures has never received a complaint about the Steps, or any request to replace the stairs; Metro–North's accident reports reflect no accident ever occurring on the Steps except plaintiff's; notes taken at the applicable Local Safety Committee and District Committee meetings show no record of a complaint or mention whatsoever of the Steps; and, while he had used the Steps prior to his fall, plaintiff never complained to anyone about the Steps' condition.

Unlike the openly visible defect giving rise to plaintiff's injury in *Gadsden*, the hazardous condition before us—collected debris at the top of the Steps—was essentially a *hidden* defect. 140 F.3d at 209. Defendant had no actual knowledge of any debris on the Steps because it had never received any complaint or comment of any kind regarding the Steps' condition. Likewise, defendant lacked constructive notice of any hazardous condition because it had no basis for believing that the Steps were even being used: The Deputy Director of the Structures department submitted an affidavit stating that Structures employees had not used the Steps since "well before 1998" and other employees had not used the Steps "since prior to 1998," ostensibly because of the proximity of two nearby access points to the railroad's right of way. Because it was not aware of any use of the Steps, no duty arose to reasonably inspect the Steps for collected debris or other dangerous conditions that defendants' employees might encounter on the job. *See Syverson*, 19 F.3d at 828 (holding that in FELA actions an employer's duty to protect its employees from a hazardous condition only arises if the employer knew or should have known of the existence of the hazardous condition (citing *Gallose*, 878 F.2d at 85)); *Gallose*, 878 F.2d at 85 ("The catalyst which ignites [the duty to provide a safe workplace] is knowledge, either actual or constructive."). The facts of *Syverson* differ in that, there, depositions revealed that police officers employed by defendant knew of the existence of vagrants on defendant's property, the officers had requested additional staffing to handle such vagrants, and had dealt with the vagrants' previous criminal activity on the premises. 19 F.3d at 827. In *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 109, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), defendant's knowledge of a pool of water on its property that contained dead animals which attracted bugs and vermin gave rise to a duty to ameliorate the condition because employees had and would continue to walk by the pool. Here, given defendants did not believe the Steps had been used "since prior to 1998," which means that defendants believed the Steps had been out of use for at least a little more than nine months prior to plaintiff's alleged accident on September 8, 1998, plaintiff has failed to demonstrate that defendants had actual or constructive notice of any hazardous condition on the Steps.[10]

10. Because defendants were not on notice of the Steps' condition, the question of the rea-

Unlike those cases in which admissible assertions of fact raised a jury question as to whether actual or constructive notice existed, *see, e.g., Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir.1993) (holding a jury could reasonably infer from pictures of a defective condition taken shortly after plaintiff's accident that condition had lasted long enough to impart constructive notice on defendant), plaintiff has failed to controvert any of defendants' assertions, and defendant has effectively demonstrated a lack of notice—and thus foreseeability—as to defendants. Therefore, defendants' motion is granted. Because plaintiff has failed to raise a genuine issue of material fact as to an element of his claim, the Court need not address the question of causation.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted as to both defendants under either standard of review articulated in *Giannullo v. City of New York*, 322 F.3d 139, 140 n. 2 (2d Cir.2003). The Court Clerk is ordered to close this case's file.

**SO ORDERED.**

sonableness of measures taken by defendants to rectify any hazards is premature and thus not reached. *See Gallose v. Long Island R.R.* *Co.*, 878 F.2d 80, 85 (2d Cir.1989) (holding that the duty to provide a safe workplace only arises only after notice is established).