21-1934-cv
*Batista v. Metro. Transportation Auth.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of July, two thousand twenty-two.

PRESENT: JON O. NEWMAN,
JOSÉ A. CABRANES,
JOSEPH F. BIANCO,
*Circuit Judges.*

───────────────────────────────────

JORGE BATISTA,

*Plaintiff-Appellant,*

v.                                                            21-1934-cv

METROPOLITAN TRANSPORTATION
AUTHORITY,

*Defendant-Appellee.*

───────────────────────────────────

**FOR PLAINTIFF-APPELLANT:**              PHILIP J. DINHOFER, Rockville, NY.

**FOR DEFENDANT-APPELLEE:**              HELENE R. HECHTKOPF, (Evan F. Jaffe, *on the brief*), Hoguet Newman Regal & Kenney, LLP, New York, NY.

Appeal from an order and judgment entered on July 9, 2021, by the United States District Court for the Southern District of New York (Lewis J. Liman, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 9, 2021 order and judgment of the District Court be and hereby are **AFFIRMED**.

Plaintiff Jorge Batista filed suit against Defendant Metropolitan Transportation Authority (the "MTA") alleging liability under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* Batista, an MTA police officer, alleges that on March 4, 2017, while he was patrolling the Brewster train station, he and his partner encountered an individual making graffiti on a train overpass. In their attempts to apprehend that individual and during the ensuing physical confrontation caused by that individual's resistance, Batista (along with his partner and the individual they sought to detain) fell through a set of double doors at the station. Batista fell down a three-story staircase behind the doors that led from the overpass to the street below, as a result of which he sustained serious injuries. He filed the present FELA suit alleging various theories of negligence against the MTA. Both parties moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and the District Court granted the MTA's motion while denying Batista's motion. *Batista v. Metro. Transportation Auth.*, No. 20-CV-1254 (LJL), 2021 WL 2894351, at *11 (S.D.N.Y. July 9, 2021). Batista now appeals. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. LEGAL FRAMEWORK

We review a grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party. *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 825 (2d Cir. 1994). For the non-moving party to succeed, "there must be evidence on which the jury could *reasonably* find" in the non-moving party's favor. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted). "To defeat summary judgment, therefore, nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (cleaned up).

FELA provides that any railroad engaging in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. A plaintiff raising a FELA claim must prove the traditional common-law elements of negligence — duty, breach, foreseeability, and causation — though "the plaintiff's burden in making a showing of causation and negligence is lighter under FELA than it would be at common law." *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006). "The test is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." *Ulfik v. Metro-N. Commuter R.R.*, 77 F.3d 54, 58 (2d Cir. 1996). Still, "[w]hile there is a considerably more relaxed standard of proof for determining negligence in FELA cases and a strong federal policy in favor of letting juries decide

these cases, FELA does not make an employer strictly liable for workplace injuries and, therefore, requires that claimants must at least offer some evidence that would support a finding of negligence." *Sinclair v. Long Island R.R.*, 985 F.2d 74, 76-77 (2d Cir. 1993) (cleaned up).

Under FELA, "[t]he touchstone of th[e] negligence inquiry is the issue of foreseeability — whether or not [the defendant] knew or should have known of the potential hazard." *Ulfik*, 77 F.3d at 58. To succeed on his FELA claim, Batista must show proof "of actual or constructive notice to the employer of the defective condition that caused the injury." *Sinclair*, 985 F.2d at 77.

## II. DISCUSSION

We agree with the District Court's conclusion that there is no evidence to support a conclusion that the MTA had actual notice of any potential hazard. *See Batista*, 2021 WL 2894351, at *5-7. We reject Batista's contention that the deposition testimony of Wesley Kennen — an employee of Metro-North Commuter Railroad ("Metro-North") who periodically inspected the Brewster station prior to the March 4, 2017 incident — demonstrates actual knowledge. Batista puts great weight on a single sentence in Kennen's testimony where, when he was asked what would happen if somebody opened the doors after having come up the staircase and a second person was attempting to come down the stairs at the same time, he testified "[h]opefully [the second person] wait[s] for [the first person]." App'x 340. We agree with the District Court's conclusion that no reasonable jury could conclude on the basis of this testimony that the MTA had actual notice of any potential hazard caused by the configuration of the doors and stairs at the Brewster station.

We further agree with the District Court's conclusion that, on the evidence presented, no reasonable jury could conclude that the MTA had constructive notice of a potential hazard caused by the configuration of the doors, landing, and stairs. *See Batista*, 2021 WL 2894351, at *7-9. In arguing otherwise, Batista relies heavily on a line of New York cases holding that it is "hazardous and unsafe to have a door swing outward and over stairs" and that such a configuration may put a defendant on constructive notice of the hazard. *See Burton v. State*, 456 N.Y.S.2d 126, 127-28 (3d Dep't 1982); *see also Acton v. 1906 Rest. Corp.*, 47 N.Y.S.3d 788, 791 (3d Dep't 2017) (reversing summary judgment in the defendants' favor where "a door opened over descending stairs"); *Griffin v. Sadauskas*, 787 N.Y.S.2d 721, 721-22 (3d Dep't 2005) (noting that "it is a matter of simple logic whether a door swinging over steps may create a hazardous and unsafe condition" (cleaned up)); *Hanley v. Affronti*, 718 N.Y.S.2d 753, 754 (4th Dep't 2000) (reversing summary judgment in the defendants' favor because whether or not defendants had "constructive notice of [an] allegedly dangerous condition" created by an unlatched door opening in towards a staircase was a triable issue of fact). But here, the door did not open directly above a staircase; instead, the door opened over a landing which was approximately four or five feet long. *See below* Figures 1 & 2 (reproduced from

3

App'x 418 and 428).[1] While it is true that *Griffin* also involved a landing, the door to that landing, when fully opened, overlapped the top steps of cellar stairs on which the plaintiff fell, 787 N.Y.S.2d at 722, unlike the approximately four- or five-foot-long one in this case.

Moreover, apart from the physical configuration of the doors, landing, and stairs, Batista is unable to point to any evidence indicating that the MTA had constructive notice of a potential hazard. Thus, while we have stated that in FELA cases, "the right of the jury to pass on factual issues must be liberally construed," *Williams v. Long Island R.R. Co.*, 196 F.3d 402, 407 (2d Cir. 1999) (internal quotation marks omitted), Batista has failed to offer "at least . . . some evidence that would support a finding of negligence," *see Sinclair*, 985 F.2d at 77 (internal quotation marks omitted).

Finally, we also agree with the District Court's conclusion that there is no merit in Batista's argument that the MTA breached its "non-delegable" duty to provide a safe workplace by outsourcing the inspection of the Brewster station to Metro-North employees. *See Batista*, 2021 WL 2894351, at *9. While our FELA cases have discussed an employer's "non-delegable duty to inspect workplace and to take reasonable precautions to protect its employees from possible harm," *Sinclair*, 985 F.2d at 78 (citing *Cazad v. Chesapeake & Ohio Ry.*, 622 F.2d 72, 75 (4th Cir. 1980)), we have never read this "non-delegable" duty to mean that an employer must *itself* inspect the workplace; instead, this restriction means "that a defendant cannot disclaim *responsibility* by contracting out non-delegable duties." *Potthast v. Metro-N. R.R. Co.*, 400 F.3d 143, 154 (2d Cir. 2005) (emphasis added).

### III. CONCLUSION

We have considered all of Batista's remaining arguments and find them to be without merit. For the foregoing reasons, therefore, we **AFFIRM** the July 9, 2021 order and judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[1] Nowhere in the record is there a definitive measurement of the length of the full landing, or, if the door is open, how much further the landing extends beyond the open door. Based on photographs in the record, the District Court concluded that "the landing appears to be considerably deeper than four feet, perhaps five feet" and that the parties estimate that the length of the open door is "between 30 and 36 inches." *Batista*, 2021 WL 2894351, at *8; *see also* Figures 1 & 2.



**Figure 1 (reproduced from App'x 418)**



**Figure 2 (reproduced from App'x 428)**